UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LUCIANO RUSSO;
GEORGE MESSIHA,

*Plaintiffs*,

– against –

NATIONAL GRID, U.S.A,

*Defendant.*

**MEMORANDUM & ORDER**
23-cv-03954 (NCM) (TAM)

**NATASHA C. MERLE**, United States District Judge:

Plaintiffs Luciano Russo and George Messiha bring this action against National Grid, U.S.A. for failure to accommodate disabilities under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290; and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107. The parties bring cross-motions for summary judgment.[1]  For the reasons stated below, the cross-motions for summary judgment are **DENIED**.

---

[1]     Hereinafter, the Court refers to the Second Amended Complaint, ECF No. 17, as "SAC"; Plaintiffs' Memorandum of Law in Support of Summary Judgment, ECF No. 43-34, as "Pls. MSJ"; Defendant's Opposition to Pls. MSJ, ECF No. 45, as "Def. Opp'n"; Plaintiffs' Reply in Support of Pls. MSJ, ECF No. 46, as "Pls. Reply"; Defendant's Memorandum in Support of Summary Judgment, ECF No. 48, as "Def. MSJ"; Plaintiffs' Opposition to Def. MSJ, ECF No. 49, as "Pls. Opp'n"; Defendant's Reply in Support of Def. MSJ, ECF No. 50, as "Def. Reply"; Plaintiffs' 56.1 Statement, ECF No. 43-33, as "Pls. 56.1"; Defendant's 56.1 Counter-Statement, ECF No. 53, as "Def. Counter"; Defendant's 56.1 Statement, ECF No. 48-1, as "Def. 56.1"; and Plaintiffs' 56.1 Counter-Statement, ECF No. 49-1, as "Pls. Counter."

## BACKGROUND

### A.    *National Grid and the COVID-19 Pandemic*

In March 2020, the State of New York issued a remote work mandate in response to the risks posed by the COVID-19 pandemic. Def. 56.1 ¶ 135.[2] National Grid "eventually assigned all dispatchers to work from home" within the following month. Def. 56.1 ¶ 138. Each dispatcher was issued a company laptop with requisite software. Def. 56.1 ¶ 141. Supervisors remained assigned to work in person at the dispatching center in order to retrieve emergency gas leak call information from center printers. Def. 56.1 ¶ 142. In 2021, dispatchers were assigned to hybrid remote and in-person schedules, with timing staggered for different dispatching roles. Def. 56.1 ¶¶ 188–190. However, dispatchers returned to fully remote work when an employee working at the NYC Dispatching Center tested positive for COVID-19. Def. 56.1 ¶ 191. In early 2022, with "virtually all" state COVID-19 lockdown rules lifted, National Grid required all dispatchers in New York to work in person at their assigned dispatching centers. Def. 56.1 ¶¶ 192–193.

### B.    *Luciano Russo*

Russo has worked for National Grid since 2002. Pls. 56.1 ¶ 4. Since 2013, he has worked as a Distribution Central Dispatcher, responsible for "dispatchi[ing] crews of mechanics to emergency jobs generally involving underground street leaks of mains and services." Pls. 56.1 ¶¶ 8–9; *see* Pls. Opp'n 10[3] (describing Russo as a "Distribution Central Dispatching Department" dispatcher). In March 2020, Russo began working remotely as directed by National Grid due to the COVID-19 pandemic. *See* Pls. 56.1 ¶ 12. As National

---

[2]    All facts are undisputed unless otherwise indicated.

[3]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

Grid implemented hybrid schedules, Russo requested and received a medical accommodation to continue working remotely due to his chronic pain and loss of feeling in his back and lower extremities, gastrointestinal conditions, and increased risk of contracting COVID due to his diabetes. Pls. 56.1 ¶¶ 5, 14−16.[4]

In Spring 2022, defendant informed Russo that his accommodation to work remotely would cease and directed him to report to the main office or an alternate Greenpoint location.[5] Pls. 56.1 ¶ 18. Throughout 2022, Russo spoke with several National Grid representatives about his condition and defendant's requirement that he return to the office or have his employment terminated. Pls. 56.1 ¶¶ 20, 24, 26−27, 31. From September 2022 to January 2023, Russo was placed on paid sick leave due to the in-person attendance requirement. Pls. 56.1 ¶ 35. National Grid ceased paying Russo in January 2023, and Russo has since "not returned to his workplace, has not been given remote work to do at home, and has not been paid." Pls. 56.1 ¶ 36.

### C.    George Messiha

Messiha has worked for National Grid since 1993. Pls. 56.1 ¶ 44. Since 2001, he has worked as a Central Meter Services Dispatcher in Brooklyn. Pls. 56.1 ¶ 47; Pls. Opp'n 9 (describing Messiha as a "Central Meter Services" dispatcher). He was also elected as a Union Delegate and "became involved in making work assignments, including overtime." Pls. 56.1 ¶ 54. In March 2020, Messiha began working remotely as directed by National Grid due to the COVID-19 pandemic. Pls. 56.1 ¶ 50. As National Grid implemented hybrid

---

[4]    Defendant disputes that Russo had a disability when he requested accommodations, asserting that it is a legal conclusion and unsupported by a corresponding citation to admissible evidence. Def. Counter ¶ 16.

[5]    Defendant disputes that its conclusion that Russo could not work from home was a denial of an accommodation. Def. Counter ¶ 18.

schedules, Messiha requested and received a medical accommodation to continue working remotely due to his "failed back syndrome," "hip-surgery related disability," and anxiety disorder induced by the deaths of his son and mother.[6] Pls. 56.1 ¶ 55.

In June 2022, defendant informed Messiha that it would terminate his accommodation to work remotely and directed him to report to the office or an alternate Greenpoint location.[7] Pls. 56.1 ¶ 57. Throughout that summer, Messiha was given permission to work remotely and remained in communication with defendant, including by providing letters from his doctor.[8] Pls. 56.1 ¶¶ 56–61. In September 2022, defendant informed Messiha that his remote work accommodation would not continue. Pls. 56.1 ¶ 64. From September 2022 to January 2023, Messiha was out on paid sick leave, with payment ceasing in mid-January 2023 and Messiha ultimately classified as "sick no-pay." Pls. 56.1 ¶¶ 72–74. Messiha returned to work at the Brooklyn call center "in or about July of this year" when he became medically cleared for in-person attendance. Oral Arg. Tr. 3:10–13 (draft on file with court).

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[9]

---

[6]    Defendant disputes that Messiha had a disability when he requested accommodations in 2021, asserting that it is a legal conclusion and unsupported by a corresponding citation to admissible evidence. Def. Counter ¶ 55.

[7]    Defendant disputes that its conclusion that Messiha could not work from home was a denial of an accommodation. Def. Counter ¶ 33.

[8]    Defendant disputes that doctor notes were regularly provided that support Messiha's claims. Def. Counter ¶ 56.

[9]    Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

On review of a Rule 56 motion, the Court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Brandon v. Royce*, 102 F.4th 47, 54 (2d Cir. 2024) (citing *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023)). When both parties submit a motion for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

The initial burden rests with the movant to demonstrate an absence of material and genuine factual disputes. *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

Once the moving party meets its burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). The Court need only consider admissible evidence, and it need not turn every evidentiary stone. *See Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

"The role of the district court on summary judgment is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney v.*

*City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). Thus, a district court properly denies summary judgment where there are disputed facts "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019).

## DISCUSSION

The parties each seek summary judgment on plaintiffs' ADA, NYSHRL, and NYCHRL claims for defendant's alleged failure to accommodate their disabilities.[10] Due to the genuine disputes of material fact discussed below, summary judgment for either party is improper.

I.    Plaintiffs' Filings

As an initial matter, plaintiffs' motion for leave to file signed declarations and an oversized memorandum of law, ECF No. 39, is **GRANTED**. Defendant alleges that several of plaintiffs' filings fail to meet the requirements set forth in 28 U.S.C. § 1746 for unsworn declarations. Def. Opp'n 10. Courts have accepted declarations that were unsigned when filed, but later cured. *See, e.g.*, *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 570 (E.D.N.Y. 2013), *aff'd in part, dismissed in part*, 594 F. App'x 723 (2d Cir. 2014) (summary order) (accepting unsigned expert reports based on subsequent affidavits); *Am. Home Assur. Co. v. ZIM JAMAICA*, 296 F. Supp. 2d 494, 499 (S.D.N.Y.

---

[10]    Although plaintiffs raise retaliation as part of their ADA violation claim, SAC ¶ 67, neither party briefed this issue when moving for summary judgment. *See generally* Pls. MSJ; Def. MSJ. The Court thus construes the cross-motions to address the ADA claim insofar as it rests on an alleged failure to accommodate.

2003) (finding possible error cured by subsequent signed declaration). The Court thus accepts plaintiffs' declarations.

Furthermore, the Court accepts plaintiffs' memorandum in support of their motion for summary judgment despite its length in violation of this Court's Individual Rules. Defendant does not argue, and likely cannot argue, that the excess length due to extraneous pasting of materials already before the Court is unduly prejudicial. In fact, the version filed on the public docket moved those materials—deposition transcript excerpts—into a supporting affidavit, which brought the motion into conformance with the Court's rules. *See* Pls.' Ltr, ECF No. 42. Finally, Russo's declaration in reply is accepted because the authentication issue raised by a pictured signature does not bar consideration of the document as evidence at the summary judgment stage. *Cf. Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (explaining that "so long as the evidence in question will be presented in admissible form at trial, it may be considered on summary judgment"). Accordingly, the Court finds no prejudice to defendant in accepting the motion papers as filed.

I.    Americans with Disabilities Act

The ADA was enacted to address the "day-to-day" experiences of people with disabilities and "provide a clear and comprehensive national mandate for the elimination of discrimination" against them. 42 U.S.C. § 12101(b). Under the ADA, discrimination includes an employer's failure to reasonably accommodate an individual with a disability. 42 U.S.C. § 12112(b)(5)(A).

Courts apply a burden-shifting framework to failure to accommodate claims. *Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021). First, plaintiffs must demonstrate a *prima facie* case, including the existence of some plausible accommodation through

which they may perform the essential functions of the job. *McMillan v. City of New York*, 711 F.3d 120, 127–28 (2d Cir. 2013). To establish a *prima facie* case for failure to accommodate, a plaintiff must demonstrate: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [plaintiff's] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan*, 711 F.3d at 125–26; *see also Laguerre v. Nat'l Grid USA*, No. 20-3901, 2022 WL 728819, at *1 (2d Cir. Mar. 11, 2022) (summary order). Where plaintiffs have made such a showing, the defendant must demonstrate that such an accommodation "would present undue hardships and would therefore be unreasonable." *McMillan*, 711 F.3d at 128. "An undue hardship is an action requiring significant difficulty or expense." *Id.*

For the purpose of the instant motions, the parties do not dispute the first two elements of a *prima facie* case: (1) that plaintiffs are persons with disabilities under the ADA and (2) that National Grid is an employer covered by the statute and had notice of plaintiffs' disabilities. *See* Def. MSJ 13 n.1 (noting defendants do not challenge that plaintiffs have a disability or that National Grid was aware of the alleged disabilities for the purposes of this motion); Oral Arg. Tr. 27:14–15. For the reasons stated below, the Court finds that there are material factual disputes as to plaintiffs' essential functions and defendant's refusal to make a reasonable accomodation such that summary judgment for either party would be inappropriate.

### a. Essential Functions

Under the third element of a *prima facie* case of failure to accommodate, plaintiffs must demonstrate that they can perform the essential functions of the job with a

reasonable accommodation. *McMillan*, 711 F.3d at 126. Defendant's motion focuses on the "essential functions" requirement. Specifically, defendant asserts that in-person attendance is an essential function of the dispatching positions that plaintiffs necessarily cannot fulfill with a remote work accommodation. *See* Def. MSJ 14. Plaintiffs argue that in-person attendance is non-essential. *See* Pls. Opp'n 28. The Court finds that there is a factual dispute as to this material question, making summary judgment unsuitable.[11]

The regulations promulgated by the Equal Employment Opportunity Commission define essential functions as the "fundamental job duties" of the position, but not "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); *see also Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997), *cert denied*, 522 U.S. 1112 (1998) (applying 29 C.F.R. § 1630.2(n)(1) to ADA claims). To determine a position's essential functions, "a court must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan*, 711 F.3d at 126.

Although no factor is dispositive, relevant factors include an "employer's judgment," "written job descriptions," consequences of not performing the function, and the work experience of employees in similar positions. *Stone*, 118 F. 3d at 97; (citing 29 C.F.R. § 1630.2(n)(3)). In particular, an employer's judgment as to which functions are essential receives "considerable deference," and a "reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). "Ultimately, however, the question whether a task

---

[11]    Because there are significant factual disputes over whether in-person attendance is an essential function of plaintiffs' dispatching positions at National Grid, the Court ends its analysis with the third element of a *prima facie* case of failure to accommodate under the ADA. The Court therefore does not address whether remote-work is a reasonable accommodation or, if so, whether remote work places an undue hardship on National Grid. *See McMillan,* 711 F.3d at 127–28.

constitutes an essential function depends on the totality of the circumstances." *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023).

Where the underlying material facts are undisputed, a court may determine the essential functions of a position as a matter of law. *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 128 (E.D.N.Y. 2014); *see also* Fed. R. Civ. P. 56(c). However, when the underlying factors, taken together and viewed in the non-movant's favor, indicate a "reasonable dispute" as to whether a duty is essential, that is a question for the trier of fact. *McMillan*, 711 F.3d at 126.

### i.  Employer's Judgment

National Grid "determined that in-person presence in the NYC Dispatching Center is essential to the safe and efficient performance of the emergency response duties of dispatcher." Def. MSJ 14. Without disputing its substance, the parties focus on the level of deference that judgment is owed. National Grid asserts that its judgment merits "greater deference" in this action because of the public safety concerns implicated by plaintiffs' dispatching positions. Def. MSJ 15. This heightened deference, which National Grid argues exceeds the "considerable deference" already provided to an employer's judgment, does not appear to be a standard discussed in the caselaw. Instead, in support of this assertion, defendant offers comparisons to several cases where courts recognized that public safety was implicated and ultimately found the challenged functions essential. Def. MSJ 11–14.

The Court recognizes the important safety elements of plaintiffs' dispatching positions. As defense counsel explained, plaintiffs' primary duties involve "communication and fielding information on the company's systems through computers, through phones, could be through radios, different devices, landlines as well as

cellphones." Oral Arg. Tr. 3:16–20. Plaintiffs communicate, for example, with National Grid "field personnel" as well as the fire department regarding gas leaks. Oral Arg. Tr. 3:20–22. But the record does not establish that, as a matter of law, the requested accomodation for remote work obviates plaintiffs' ability to safely perform the essential functions of their dispatching duties. Accordingly, the cases defendant relies on to support its contention that public safety concerns require heightened deference here are inapposite. The focus in those cases is how the employees' disabilities and the availability of a reasonable accomodation directly affected their ability to perform an essential function of a field position and posed a direct, immediate threat to public safety.

For example, defendant relies on a line of cases focused on the duties of bus operators in light of the public safety concerns of an employee operating a multi-ton vehicle filled with dozens of passengers throughout the streets of New York City. *See* Def. MSJ 11–14. In *Burton v. Metropolitan Transportation Authority*, the court found that the risk of stroke or hemorrhage caused by plaintiff's mechanical heart valve and anticoagulant medication rendered him unqualified to perform the essential functions of a bus operator for the transit authority. 244 F. Supp. 2d 252, 260, 262–63 (S.D.N.Y. 2003). The court found particularly persuasive the realities of driving a bus—including "frequent interactions with passengers," "the potential for monthly bodily injury," and "exposure throughout the work day to moving objects . . . [and] combative persons"—and a state traffic law disqualifying from driving a bus those individuals with cardiovascular disease known to be accompanied by greater risk of collapsing. *Id.* at 261–63. In *Shannon*, the court found that, consistent with the transit authority's determination, a bus driver's "ability to distinguish the colors of traffic lights is essential." 332 F.3d at 102–03. The court recognized the fundamental aspects of operating a bus, including driving in poor

weather and through traffic hazards, and federal regulations requiring commercial motor vehicle operators be able to recognize the "standard red, green, and amber" colors of traffic signals. *Id.* As discussed *infra,* both of these cases are materially distinguishable from plaintiffs' jobs and duties at National Grid.

The cases defendant relies on outside of the bus operation context similarly demonstrate circumstances that are absent here: physical violence and substance abuse in public health roles. For example, in *Johnson v. New York Hospital*, the court gave "substantial" deference to a hospital because the "job in question implicates issues of public safety." 189 F.3d 461 (2d Cir. 1999) (unpublished table decision). The court found that plaintiff, who had previously assaulted several coworkers at the hospital, had engaged in the "kind of misconduct [that] justified the employer's refusal to rehire" plaintiff as a nurse. *Id.* Similarly, the court in *D'Amico v. City of New York* noted the "dangerous and difficult" nature of firefighting and the public safety "consequences of a potential mishap." 132 F.3d 145, 151 (2d Cir. 1998). The court found that plaintiff had not suggested *any* accommodation based on his cocaine addiction that would allow him to perform the essential functions of a firefighter. *Id.* at 151–52. Unlike these cases concerning extreme risks, there is no evidence in the record that plaintiffs' requested accomodation of remote work directly pose a threat to public safety.

Indeed, dispatching positions are distinct from field positions. *See, e.g.*, *Pierre v. N.Y.C. Fire Dep't*, No. 22-cv-07425, 2024 WL 360662, at *2 (E.D.N.Y. Jan. 31, 2024) (noting that FDNY put plaintiff on dispatching duty as a reasonable accommodation pursuant to the ADA). Dispatchers, by their nature, are not in the field and, given their more removed roles, their duties do not raise the same type of imminent safety concerns. Instead, dispatchers, like plaintiffs, direct responders to service physical locations. *See*

Def. MSJ 16 (noting requirements to "obtain essential information about reported gas emergencies, . . . communicate with and timely dispatch[,] . . . assign, monitor, coordinate, and . . . interface with first responders"). Moreover, in the dispatching context, courts make their determinations based on the circumstances of the specific position and company. For instance, in *Di Iorio v. County of Suffolk*, the court found mandatory overtime an essential function of employment as an emergency 911 dispatcher because ongoing staffing shortages meant that without such overtime, the entire emergency dispatch operations would cease. No. 21-cv-01273, 2024 WL 1908602, at *12 (E.D.N.Y. May 1, 2024). Defendant has not presented evidence that similar circumstances exist here.

Defendant also argues that whether in-person work is an essential function is not "appropriate for a jury" because plaintiffs' dispatcher duties are "critically safety sensitive." Oral Arg. Tr. 12:8–10. Instead, defendant argues, issues concerning public safety should be decided as a matter of law based on the employer's determination of what is an acceptible risk to public safety. National Grid explains: "The company protects the interests of the people" and the "general public" beyond its customer base "because a gas explosion doesn't discriminate between rate payers and non-rate payers." Oral Arg. Tr. 12:12–18. This argument is not only unsupported by the standard for summary judgment, under which all material factual disputes go to the trier of fact, including those that concern public safety. *Cf. Campa v. Entergy Nuclear Operations, Inc.*, No. 17-cv-00792, 2019 WL 4221560, at *12–13 (S.D.N.Y. Sept. 5, 2019) (denying summary judgment where material factual dispute remained as to nuclear watchperson essential duties); *Monroe v. Cnty. of Orange*, No. 14-cv-01957, 2016 WL 5394745, at *13 (S.D.N.Y. Sept. 27, 2016) (denying summary judgment despite "safety risks" regarding essential functions of

corrections officer). It is also without question that the jury is a fundamental democratic institution in our legal system. To state that factual issues implicating public safety are beyond the reach of a civil jury is to ignore the very function of that body whose "purpose" is to "assure a fair and equitable resolution of factual issues." *Colgrove v. Battin*, 413 U.S. 149, 157 (1973).

Accordingly, the Court gives defendant's judgment the considerable—but not absolute—deference when assessing the question of whether in-person attendance is an essential function of plaintiffs' jobs.

ii. Totality of the Circumstances

On its review of the totality of the circumstances, the Court finds that the parties each raise facts disputing the essential nature of an in-person requirement such that a reasonable juror might find for either party and summary judgment would be misguided. Relevant here, even were the Court to find defendant was entitled to heightened deference, it can nevertheless find that there are genuine disputes of material fact on the alleged essential function that make summary judgment inappropriate. *See Campa*, 2019 WL 4221560, at *12–13 (providing "considerable deference" to employer's judgment and concluding that totality of the circumstances established a genuine dispute of material fact as to the essential function of the position).

Here, the parties primarily dispute two factors: the consequences of plaintiffs working remotely and the work experiences of workers in the same or similar jobs.[12]

---

[12] The Court notes that, although plaintiffs are both dispatchers, they are different types of dispatchers. *See* Pls. Opp'n 10 (describing Russo as a "Distribution Central Dispatching" dispatcher and unlike Messiha, who is described as a Central Meter Services dispatcher). The parties have not argued or presented evidence that these different positions require different analyses as to their essential functions.

First, defendant argues that the consequences of working remotely are dire. Citing the East Harlem gas explosion of 2014, defendant asserts that mere seconds of delay can have fatal consequences. *See* Def. MSJ 17, 27 (citing New York State Public Service Commission Order ("PSC Order"), ECF No. 48-20). Defendant asserts that the gas explosion was caused by connectivity issues, but acknowledges that the connectivity issues were not caused by remote work. *See* Def. MSJ 27–28 (citing PSC Order); Oral Arg. Tr. 4:20–21. However, defendant cites other occasions when dispatchers at National Grid were slow to respond while working remotely due in part to connectivity issues. Def. MSJ 21–22 (citing Smith Decl. ¶¶ 23–25, ECF No. 48-2). Defendant also points to several backup systems that exist at the Central Dispatching Center, including a surge generator that can return power after an outage in approximately 10 to 15 seconds. Def. MSJ 22–23 (citing Washington Decl. ¶ 3, ECF No. 48-3).

Plaintiffs dispute any dire consequences of remote work and argue that defendant's fears are unrealized. Contrary to defendant's assertions, plaintiffs argue that the prior connectivity issues were isolated incidents and were not experienced by plaintiffs when they worked remotely. *See* Pls. MSJ 8, 12–13 (citing Russo Decl. ¶ 16, ECF No. 43-2; Messiha Decl. ¶ 11, ECF No. 43-1). Furthermore, plaintiffs seem to raise a question as to the credibility of their supervisors' testimony. Specifically, plaintiffs question National Grid's connectivity concerns based on their experience working remotely without requirements to ensure stable connections or backup systems, such as mandating the use of an ethernet cable or access to a back-up generator. *See* Pls. Opp'n 20. That is, plaintiffs seem to argue that if connectivity was a genuine concern, defendant would have attempted to address it when all dispatchers were required to work remotely during the COVID-19 pandemic.

Second, defendant contends that the work experiences of similarly situated employees counsels for a finding that in-person attendance is an essential function of plaintiffs' dispatcher roles. Specifically, defendant asserts that all other dispatchers work in-person. *See* Def. 56.1 ¶ 174. Yet "[p]hysical presence at or by a specific time is not, as a matter of law, an essential function of all employment." *McMillan*, 711 F.3d at 126; *cf. Frantti v. New York*, 414 F. Supp. 3d 257, 287 (N.D.N.Y. 2019), *aff'd*, 850 F. App'x 17 (2d Cir. 2021) (summary order) (analyzing whether physical presence was an essential function but granting summary judgment). Indeed, plaintiff counters that defendant allows remote work for at least one call center representative, Pls. Opp'n 8 (citing Messiha Opp'n Decl. ¶ 4, ECF No. 44-2), whose position requires employees to receive calls from individuals reporting emergencies and then "take down the information, enter [it] into the system, [and] create an order to the dispatch," Oral Arg. Tr. 11:17–22. Viewing the record in the light most favorable to plaintiffs, a jury could find that similar positions can be carried out through remote work such that in-person attendance is not essential to plaintiffs' roles as dispatchers. On the other hand, viewing the record in the light most favorable to defendant, a jury could find that one example of remote work is insufficient to counteract the prevailing policy of in-person work at National Grid.

Defendant also contends that remote work during the COVID-19 pandemic caused an increase in disciplinary action and increased distractions among dispatchers. Def. 56.1 ¶¶ 170–73. Plaintiffs respond to defendant's focus on the "entirety of the company's experience," Oral Arg. Tr. 9:10, by pointing to testimony that neither plaintiff had performance issues even during the height of the pandemic while working remotely. Pls. MSJ 21 (citing Lewis Dep. Tr. 51:23–52:6, ECF No. 43-22; McGovern Dep. Tr. 36:8–38:20, ECF No. 43-23). These are separate factors under *Stone*: one is the work

experience of others similarly situated, and one pertains to the consequences of plaintiffs' experience working remotely. *See Stone*, 118 F. 3d at 97. Regardless, viewing these facts in the light most favorable to either party does not resolve the question as to whether performance indicators would render in-person attendence essential for dispatchers. That is, the jury could reasonably find that, on reviewing the totality of the circumstances, evidence of other employees' decreased productivity is cancelled out by plaintiffs' record of productivity.

On considering the totality in either party's favor—including the considerable deference afforded to National Grid's judgment—the Court finds that whether in-person attendance is an essential function of a dispatching job at National Grid is the "subject of reasonable dispute" and therefore not ripe for summary judgment. *McMillan*, 711 F.3d at 126.

### b.  *Reasonable Accommodations*

Even if the Court were to find that plaintiffs could perform the essential function of their jobs with a remote work accommodation, summary judgment would nonetheless be inappropriate on the current record. Defendant does not address whether remote work would constitute a reasonable accommodation. Oral Arg. Tr. 28:8–12. However, plaintiffs argue that remote work is a reasonable accomodation and suggest that defendant's offer for plaintiffs to work from the dispatching center in Brooklyn's Greenpoint neighborhood is not a reasonable accomodation. *See* Pls. MSJ 26.

"The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 98 (2d Cir. 2015). Although "employers are not required to provide a perfect accommodation or the very

accommodation most strongly preferred by the employee," an accommodation "must be effective." *Id.* at 95. The "reasonableness" of an employer's offered accommodation "is a fact-specific question that often must be resolved by a factfinder." *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 312 (2d Cir. 2020).

Both parties agree that plaintiffs were in communication with National Grid about their requests to work remotely and that National Grid ultimately rejected plaintiffs' requests. *See* Pls. 56.1 ¶¶ 56–64; Def. 56.1 ¶¶ 215, 231. However, the parties dispute whether defendant refused a reasonable accommodation by not allowing plaintiffs to work remotely, as well as whether working in the Greenpoint dispatching center was a reasonable accomodation. *See* Def. Counter ¶¶ 18, 33; Pls. MSJ 26 (listing deposition testimony of National Grid managers); Oral Arg. Tr. 17:5–18, 25:2–5. These factual disputes as to reasonableness—and the process by which the parties attempted to reach an agreement as to reasonableness—preclude summary judgment.

II.     NYSHRL and NYCHRL

In addition to the ADA claims, the Court analyzes the availability of summary judgment in favor of either party for plaintiff's NYSHRL and NYCHRL claims. Both the NYSHRL and NYCHRL provide broader protections for individuals with disabilities than does the ADA. *Vig v. New York Hairspray Co., L.P.*, 885 N.Y.S.2d 74, 77 (2009). Nonetheless, a claim of disability discrimination under NYSHRL "is governed by the same legal standards as govern federal ADA claims." *Noll*, 787 F.3d at 94 (citing *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n. 3 (2d Cir.2006)).

However, "the NYCHRL requires an independent analysis." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). The New York City Council expressly "confirmed the legislative intent to abolish parallelism between the

NYCHRL and federal and state anti-discrimination law." *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 295 (S.D.N.Y. 2012). The NYCHRL analysis requires courts to analyze claims "more liberally than [claims under] its federal and state counterparts," *id.* at 295, and "broadly in favor of discrimination plaintiffs," *Mihalik*, 715 F.3d at 109. The ADA and NYSHRL therefore provide a "floor" for NYCHRL claims whereby violations under the federal and state laws also violate the more protective framework of NYCHRL. *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir. 2009).

Because the Court finds genuine issues of material fact under the ADA, as discussed *supra*, summary judgment for either party is likewise inappropriate pursuant to the NYSHRL. However, whether either party is entitled to judgment as a matter of law on their NYCHRL claim requires a separate inquiry. *See Vargas v. Morgan Stanley*, 438 F. App'x 7, 10 (2d Cir. 2011) (summary order) (finding that the district court "erred in dismissing [plaintiff's NYCHRL claims] under the same analysis it applied to his federal and state claims").

A *prima facie* case of failure to accommodate pursuant to the NYCHRL requires the same elements as an ADA claim "except" that "the NYCHRL directs that the plaintiff's qualification for the position is not an element of a *prima facie* case." *Owens v. City of New York Dep't of Educ.*, No. 21-2875, 2022 WL 17844279, at *1 (2d Cir. Dec. 22, 2022) (summary order) (citing *Williams v. MTA Bus Co.*, 44 F.4th 115, 137 (2d Cir. 2022)). Instead, the NYCHRL "places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business." *Jacobsen v. New York City Health & Hosps. Corp.*, 22 N.Y.3d 824, 835 (2014). *See also Heiden v. New York City Health & Hosps. Corp.*, No. 20-cv-10288, 2023 WL 171888, at *32 (S.D.N.Y. Jan. 11, 2023) ("The

NYCHRL defines reasonable accommodation more broadly than the ADA and the NYSHRL to be any such accommodation that can be made that shall not cause undue hardship in the conduct of the employer's business.").

Here, defendant argues that remote work does not provide a "safe and reasonable accommodation" for plaintiffs' position as dispatchers. *See Jacobsen*, 22 N.Y.3d at 835; Def. Opp'n 31 (noting defendant "determined that performing the duties of dispatcher in person . . . was essential"); *see also* Def. MSJ 11–15 (arguing that remote work for its dispatcher employees endangers public safety). However, as discussed *supra*, genuine and material factual disputes remain as to whether plaintiffs could safely perform their essential functions while working remotely. For example, defendant has offered evidence regarding prior gas emergencies relating to connectivity issues. *See supra* Part I.a.ii 14– 15. Plaintiffs have provided evidence to dispute the frequency of those emergencies and their relation to remote work. *See supra* Part I.a.ii 15. Viewing the record most favorably to defendant, those disputes regarding public safety preclude summary judgment for plaintiff pursuant to the NYCHRL. Furthermore, viewing the record most favorably to plaintiff, the NYCHRL's "more protective framework" precludes summary judgment for defendant. *See Loeffler,* 582 F.3d at 278.

## CONCLUSION

For the reasons stated above, the cross-motions for summary judgment are **DENIED**.


       **SO ORDERED.**


                             __*/s/ Natasha C. Merle*____
                             NATASHA C. MERLE
                             United States District Judge

Dated:       December 20, 2024
                Brooklyn, New York