COURT'S
EXHIBIT NO. I
IDENTIFICATION/EVIDENCE
DKT.# CV 23-3954
DATE: 10|10|25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LUCIANO RUSSO; GEORGE MESSIHA, *Plaintiffs,* – against – NATIONAL GRID USA, *Defendant.* | **JURY INSTRUCTIONS** 23-cv-03954 (NCM) (TAM) |

**NATASHA C. MERLE**, United States District Judge:

## GENERAL INSTRUCTIONS

### I.      Introduction

Members of the jury, now that you have heard all of the evidence in the case, it is my duty to give you instructions as to the law applicable in this case. We are all grateful to you for the close attention you have given to this case thus far. I ask that you continue to do so as I give you these instructions.

As you know, plaintiffs George Messiha and Luciano Russo each claim that the defendant, National Grid USA, unlawfully failed to accommodate their disabilities in violation of the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law.

My instructions will be in three parts:

<u>First</u>, I will give you instructions regarding the general rules that define and govern the duties of a jury in a civil case such as this;

<u>Second</u>, I will instruct you as to the legal elements of plaintiffs' claims; and

<u>Third</u>, I will give you some general rules regarding your deliberations.

## II.    Role of the Court

Let me start by restating our respective roles as judge and jury.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or ought to be— it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

## III.    Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection

2

of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nothing that I have previously said or will say about a fact is evidence. You should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. Additionally, you may not consider any answer that I directed you to disregard or that I directed struck from the record.

At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

You, ladies and gentlemen, are the sole judges of what the facts are. To determine these, you should take into consideration the story told by the witnesses, the manner in which they told it, the probability of the story being true, and the interest of the witness, if any, in the result of the case. It is for you to say how far, if at all, a witness is to be believed. The evidence presented conflicts. But it is the function of the jury, under proper instructions of the court, to judge the credibility of witnesses, to appraise their testimony, to weigh contradictory testimony and conflicting circumstances, and to draw the ultimate conclusions as to the facts.

You are the exclusive judges of the facts. You are to perform the duty of finding the facts without bias or prejudice to any party. You are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

3

## IV.    Role of Counsel

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Attorneys also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the Court. You should not show any prejudice against an attorney or his or her client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion as to the weight of such evidence.

## V.    Jury to Disregard Court's View

I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence. Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your

hearing. Whether offered evidence is admissible is purely a question of law in the province of the Court and outside the province of the jury. In admitting evidence to which objection has been made, the Court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence. Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between Court and counsel held out of your hearing or sight.

### VI.    Improper Considerations

#### A.  Race, Religion, National Origin, Sex, or Age

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence.

It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender or age.

It would be equally improper for you to allow any feelings you might have about the nature of the claim against the defendant to influence you in any way.

The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

#### B.  Sympathy

Under your oath as jurors you are not to be swayed by sympathy. If you let sympathy for any party interfere with your clear thinking, there is a risk that you will not arrive at a just verdict. You should be guided solely by the evidence presented during the

5

trial, without regard to the consequences of your decision. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict.

### VII.   Multiple Parties & Corporate Defendant

There are two plaintiffs in this case – Mr. Russo and Mr. Messiha. Each plaintiff is entitled to separate consideration of the evidence related to his claims against the defendant.

It is the desire of the Court and of all the parties that you return a verdict on each of the plaintiffs' claims against the defendant. However, if, after conscientious deliberations, you are only able to agree on a verdict concerning one of the parties or some of the claims, you may return a verdict concerning only those parties or those claims.

Also, in this case, the defendant, National Grid, is a corporation. The mere fact that one of the parties is a corporation does not mean it is entitled to any more or lesser consideration by you. All litigants are equal before the law, and corporations are entitled to the same fair consideration as you would give any other individual party.

### VIII.  Burden of Proof

This is a civil case and as such the plaintiffs have the burden of proving the material allegations of their complaint by a preponderance of the evidence.

If after considering all of the testimony you are satisfied that one or both of the plaintiffs have carried their burden on each essential point as to which they have the burden of proof for that claim, then you must find for the plaintiff, or both plaintiffs, on that claim. If after such consideration you find the evidence offered by both parties to be in balance or equally probable, then that plaintiff has failed to sustain his burden and you must find for the defendant on that claim.

If upon a consideration of all the facts on the issue of whether defendant is liable for failing to reasonably accommodate Mr. Russo and/or Mr. Messiha, and you find that that plaintiff has failed to sustain his burden for each claim, then you should proceed no further and your verdict must be for the defendant. If, however, you find that the plaintiff has sustained his burden on this issue, then you should proceed to consider the issue of whether accommodating the plaintiff would have imposed an undue hardship on defendant. In this regard, the burden is upon the defendant to establish the affirmative defense of an undue hardship. You must make this determination for each plaintiff individually—you may find in favor of one, both, or neither plaintiff based on your findings of fact regarding that plaintiff.

If you determine that the defendant has sustained its burden of establishing the affirmative defense of undue hardship, then you should proceed no further and your verdict must be for the defendant. If, however, you find that the plaintiff has established the essential elements of his case and that the defendant has not sustained its burden of the affirmative defense, then you should proceed to consider the issue of damages.

## IX.    Preponderance of the evidence

When discussing the parties' burdens, I have used the term "preponderance of the evidence." If you conclude that the party bearing the burden of proof has failed to establish the claim by a preponderance of the evidence, you must decide against them on the issue you are considering.

As I discussed with you prior to the parties' opening statements, to establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses

or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence—he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

### X.    What is and is not evidence

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts. During the trial, certain testimony was presented to you by the reading of a deposition. You should give this testimony the same consideration you would give it had the witness appeared and testified here in court.

By contrast, as I have stated, the questions of the lawyers are not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions.

If certain testimony or exhibits were received for a limited purpose—such as considering a document only to prove that the document was sent and received, rather than considering the truth of the statements within the document—you must follow the limiting instructions I have given.

As I have instructed you, arguments by lawyers are not evidence, because the lawyers are not witnesses. However, you may give consideration to their arguments in making up your mind on what inferences to draw from the facts which are in evidence. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

To constitute evidence which may be considered by you, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## XI.    Direct and Circumstantial Evidence

There are two types of evidence that you may use in reaching your verdict—direct evidence and circumstantial evidence. Direct evidence is when a witness testifies about something the witness knows by virtue of his or her own senses—something the witness has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came in the courthouse this morning, the sun was shining and it was a nice day. Assume that the courtroom windows, if we had them, were covered and you could not look outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet. A few minutes later, another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, so you have no direct evidence of that fact. But on the combination of facts I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience, and common sense, the existence or non-existence of some other fact. An inference is not a speculation, suspicion, or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence.

There are times when different inferences may be drawn from the same proven facts. Here, the one side asks you to draw one set of inferences, while the other side asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

## XII. Credibility of witnesses

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called on to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of the witness's memory, the witness's candor or lack of candor, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

It is for you to say how far, if at all, a witness is to be believed. It is the function of the jury, under proper instructions of the court, to judge the credibility of witnesses, to appraise their testimony, to weigh contradictory testimony and conflicting circumstances, and to draw the ultimate conclusions as to the facts. Always remember that you should use your common sense, your good judgment, and your own life experience.

If you find that any witness has willfully testified falsely to any material fact, that is, any important matter, then the law permits you to disregard the entire testimony of that witness based on the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness totally unworthy of belief. You may accept so much of that witness's testimony as you deem true and disregard what you feel is false.

**SUBSTANTIVE LAW**

### I.     Summary of the claims

I am going to briefly restate the contentions of the parties. In stating these contentions, I express no opinion of the facts.

As you know, the plaintiffs in this case, Messrs Luciano Russo and George Messiha, are employees of National Grid. The two plaintiffs worked for many years as dispatchers in National Grid's New York City Dispatch Center. In March or April 2020, due to the COVID-19 pandemic, National Grid assigned all dispatchers, including plaintiffs, to work from home. In early 2022, National Grid required dispatchers to return to the New York City Dispatch Center. In response to this requirement, each plaintiff requested a disability accommodation which would have allowed them to continue working from home. National Grid denied these requests. Plaintiffs filed this lawsuit, which claims that National Grid's denial constituted a failure to accommodate their disabilities in violation

of the ADA, the New York State Human Rights Law, and the New York City Human Rights Law. These laws, while they have overlapping requirements, have some important differences. I am going to instruct you as to each statute individually.

## II.    The ADA

First, Mr. Russo and Mr. Messiha each claim that the defendant, National Grid, unlawfully failed to accommodate their disabilities in violation of the Americans with Disabilities Act, or the "ADA." The ADA prohibits an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the defendant] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business[.]" 42 U.S.C.A. § 12112.

To succeed on a claim for failure to accommodate under the ADA, a plaintiff must prove four elements, each of them by a preponderance of the evidence. Those elements are: (1) the plaintiff has a disability; (2) the defendant had notice of the disability; (3) the plaintiff could perform the essential functions of the job with or without reasonable accommodation; and (4) the defendant refused to make such an accommodation. I will now define some of the terms I just used when describing the elements.

### A. Disability

As I said, the first element of a failure to accommodate claim under the ADA is that the plaintiff has a disability. A "disability" is a mental or physical impairment that substantially limits the person in at least one of the major activities of life.

### i.  Impairment

In order to prove that he has a disability under the ADA, the plaintiff must first prove by a preponderance of the evidence that he has a physical or mental impairment. An impairment is:

(1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, speech, cardiovascular, reproductive, digestive, urinary, immune, blood and circulation, lymphatic or endocrine glands, or skin; or

(2) any mental or physiological disorder, such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

### ii.  Major Life Activity

If you find that the plaintiff meets one of the definitions of an impairment, you must then determine whether that impairment substantially limits a major life activity.

"Major life activities" are the normal activities of living. They include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Major life activities also include the operations of a major bodily function, including but not limited to functions of the immune system, special sense organs, skin, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, musculoskeletal, endocrine, and reproductive functions.

iii.    Substantial Limitations

Finally, the plaintiff must prove by a preponderance of the evidence that, as a result of the impairment, his ability to perform major life activity was substantially limited as compared to most people in the general population.

An impairment need not entirely prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting, but not every impairment is considered a substantial limitation. In determining whether an individual is substantially limited in a major life activity, you may consider facts such as the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or the duration of time for which the individual can perform the major life activity.

This is the definition of disability you should consider when evaluating Mr. Russo and Mr. Messiha's claims under the ADA.

B. Notice

The second element of a failure to accommodate claim under the ADA is that the defendant has notice of the plaintiff's disability. The plaintiff must prove that the defendant was aware of his disability, and is considered to have notice if the defendant either knew or reasonably should have known that the plaintiff is disabled.

C. Essential Functions

The third element of a failure to accommodate claim under the ADA is that the plaintiff could perform the essential functions of the job with or without a reasonable accommodation.

To satisfy this element, the plaintiff must prove two things by a preponderance of the evidence: first, that he is otherwise qualified for the position he holds and, second, that the plaintiff can perform the essential functions of that employment position with or without reasonable accommodation. I will now define some of these terms for you.

The plaintiff is otherwise qualified for the position if the plaintiff has the requisite skill, experience, education, and other job-related requirements of the employment position involved in this case. If he cannot satisfy this standard, then the plaintiff is not a qualified individual, even if the reason he is not qualified is because of the disability, as, for example, where a person with a visual impairment would be disqualified from driving a bus.

The next step is to determine whether he has proven by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation. Under the ADA, the plaintiff must prove, by the preponderance of the evidence, that some accommodation exists that would allow him to safely perform the essential functions of his employment.

Of course, in order to make this determination, you will need to determine what the essential functions of the employment position are. The "essential functions of an employment position" are the basic duties of a job that a person must be able to perform in order to hold a particular position.

Why a job function is considered essential can be for a number of reasons. These include, but are not limited to, the following:

1. the reason the position exists is to perform that function;

2. there are a limited number of employees available among whom the performance of that job function can be distributed; or

3. the job function is highly specialized and the person in that position is hired for his expertise or ability to perform that particular job function.

In determining whether a particular job function is essential, you may consider the following factors, along with all of the evidence which has been presented to you:

a)      the employer's judgment as to which functions of the job are essential;

b)      written job descriptions prepared by the employer for advertising or posting the position;

c)      written job descriptions prepared by the employer for use in interviewing applicants for the position;

d)      the amount of time spent performing the function;

e)      the consequences of not requiring the person holding the position to perform the function;

f)      the terms of any collective bargaining agreement;

g)      the work experience of past employees who have held the position; and

h)      the work experience of current employees who hold similar positions.

While no one listed factor is dispositive, you must give considerable deference to the employer's judgment regarding what functions are essential for service in a particular position. Ultimately, however, the question whether a task constitutes an essential function depends on the totality of the circumstances.

### D. Reasonable Accommodation

To establish the third element of a failure to accommodate claim under the ADA, the plaintiff must demonstrate by a preponderance of the evidence that he was able to

perform the essential functions of the employment position with or without reasonable accommodation.

If you find that the plaintiff was otherwise qualified, as I explained that term to you, and you also find that the plaintiff was able to fulfill all of the essential functions of the job without any accommodation, then he is a qualified individual. However, if you find that the plaintiff was qualified but unable to fulfill all of the essential functions of the job without accommodation, then you must consider whether there were reasonable accommodations that the defendant could have made that would have enabled the plaintiff to fulfill the essential functions he could not otherwise fulfill.

A reasonable accommodation must be reasonable both in terms of cost and efficiency. Thus, you may consider the financial and administrative burdens that would be placed on the employer if required to make a particular accommodation. You may also consider the impact of an accommodation on other employees. A reasonable accommodation can never involve the elimination of an essential function of a job.

A disabled employee has the obligation to suggest reasonable accommodations to the employer. An employer is not required to grant every request by an employee; it is required to make only those reasonable accommodations that allow the employee to function in the position. An employee may not require an employer to accept a particular accommodation if another one will accomplish the necessary result.

The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the defendant and the plaintiff. The ADA contemplates that the parties should engage in an interactive process to work together to determine if and how the employee's disability can be reasonably accommodated.

18

## III.    Undue Hardship

If you find that Mr. Russo and/or Mr. Messiha have proved the elements of a failure to accommodate claim under the ADA, as I have just described them to you, then you should consider National Grid's affirmative defense of undue hardship.

Under the ADA, an employer is not required to provide an accommodation that will impose an undue hardship on the operation of that employer's business. Thus, if you find that defendant refused to grant plaintiff an accommodation, you must then determine whether granting the accommodation would have caused the employer to suffer an undue hardship. An "undue hardship" is any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business.

The defendant has the burden of proving by a preponderance of the evidence that an accommodation would constitute an undue hardship. In making this determination, you may consider the following factors:

    a.   the nature and cost of the accommodation;

    b.   the size and nature of the defendant's business, and the financial resources available to it; and

    c.   the impact of the accommodation on the operation of the defendant's business.

## IV.    NYSHRL

I will now instruct you on Mr. Russo and Mr. Messiha's second claim, which is failure to accommodate a disability in violation of the New York State Human Rights Law.

The New York State Human Rights Law provides that it is unlawful to refuse to provide a reasonable accommodation for the known disabilities of an employee.

The elements of a failure to accommodate claim under the New York State Human Rights Law are similar to the elements of an ADA claim which I have already explained to you. To succeed on a claim of failure to accommodate under New York State Human Rights Law, the plaintiff must prove by a preponderance of the evidence that (1) plaintiff was disabled within the meaning of the New York State Human Rights Law, (2) the defendant has notice of the disability, (3) the plaintiff could perform the essential functions of his job with reasonable accommodation, and (4) the defendant refused to make such an accommodation. I will now define these terms, because while there is overlap between the elements of an ADA claim and a New York State Human Rights Law claim, there are important differences that I will instruct you on.

### A. Disability

The definition of disability is different under the New York State Human Rights Law and the ADA. The New York State Human Rights Law definition of disability is broader than the definition under the ADA. Under the New York State Human Rights Law, "disability" is defined as (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, (b) a record of such an impairment or (c) a condition regarded by others as such an impairment.

Unlike the definition of disability under the ADA, the definition under the New York State Human Rights Law does not require the plaintiff to show that the impairment substantially limits a major life activity.

20

### B. Notice

The second element of a failure to accommodate claim under the New York State Human Rights Law is that the defendant has notice of the plaintiff's disability. This element is the same as under the ADA. The plaintiff must prove that the defendant was aware of his disability and is considered to have notice if the defendant either knew or reasonably should have known that the plaintiff is disabled.

### C. Essential Functions

The third element of a failure to accommodate claim under the New York State Human Rights Law is whether the plaintiff is able to perform the essential functions of the employment position with a reasonable accommodation.

You will recall that when instructing you on the ADA, I informed you that the plaintiff had to show that he was a "qualified individual." A finding that a plaintiff is a "qualified individual" is only required to establish liability under the ADA, not the New York State Human Rights Law.

To determine the essential functions of the plaintiff's employment under the New York State Human Rights Law, you may apply the same instructions that I gave you to determine the essential functions of the plaintiff's employment under the ADA. (See pages 15–17 above).

### D. Reasonable Accommodation

If you find that the plaintiff has proven that he is able to fulfill the essential functions of the job with an accommodation, then you must consider whether the plaintiff has proven by a preponderance of the evidence that there are reasonable accommodations that the defendant could provide. The New York State Human Rights Law defines a

"reasonable accommodation" as an action which would permit an employee with a disability to perform the activities involved in the job in a reasonable manner.

Factors that may be considered in determining whether an accommodation is reasonable under the New York State Human Rights law include: (i) efficacy or benefit provided by the accommodation toward removing the impediments to performance caused by the disability; (ii) convenience or reasonableness of the accommodation for the employer; and (iii) the hardships, costs, or problems it will cause for the employer, including those that may be caused for other employees.

As with the ADA, the appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the defendant and the plaintiff. The New York State Human Rights Law contemplates that the parties will engage in an interactive process to work together to determine if and how the employee's disability can be reasonably accommodated.

### V.    Undue Hardship

As with the ADA, an employer is not required to provide an accommodation which the defendant proves, by a preponderance of the evidence, would impose an undue hardship on the employer.

In determining whether National Grid has proven that allowing Mr. Russo or Mr. Messiha to work from home would impose an undue hardship within the meaning of the New York State Human Rights Law, you may consider factors such as:

    i.   The overall size of the business, program or enterprise with respect to the number of employees, number and type of facilities, and size of budget;

ii.   The type of operation which the business, program or enterprise is engaged in, including the composition and structure of the workforce; and

iii.  The nature and cost of the accommodation needed.

## VI.   NYCHRL

The final claim brought by each plaintiff is a claim that the defendant failed to accommodate their disabilities in violation of the New York City Human Rights Law. The New York City Human Rights Law provides that it "is an unlawful discriminatory practice for [an employer] not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known[.]" N.Y. Admin. Code § 8-107(15)(a).

To succeed on a claim under the New York City Human Rights Law, the plaintiff must prove by a preponderance of the evidence that: (1) the plaintiff was disabled within the meaning of the New York City Human Rights Law; (2) the defendant had notice of the disability; (3) the plaintiff can perform the essential requisites of the job with reasonable accommodation; and (4) the defendant refused to make an accommodation.

### A. Disability

Under the New York City Human Rights Law, a disability is defined as any physical, medical, mental or psychological impairment, or a history or record of such impairment. This includes, but is not limited to, an impairment of the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or, a mental or psychological impairment.

23

This definition does not require the plaintiff to show that the impairment substantially limits a major life activity.

### B. Essential Functions

Again, you will recall that when instructing you on the ADA, I informed you that the plaintiff had to show that he was a "qualified individual." As with the New York State Human Rights Law, this is not required under the New York City Human Rights Law.

I also instructed you that under the ADA, the plaintiff must prove, by the preponderance of the evidence, that some accommodation exists that would allow him to safely perform the essential functions of his employment.

The burden of proof on this element is different under the New York City Human Rights Law. Under the New York City Human Rights Law, it is the defendant's burden to show by a preponderance of the evidence that plaintiff was unable to perform the essential functions of his job, even with a reasonable accommodation. To determine the essential functions of the plaintiff's employment under the New York City Human Rights Law, you may apply the same instructions that I gave you to determine the essential functions of the plaintiff's employment under the ADA. (See pages 15–17 above). You must, however, keep in mind that the defendant bears the burden of this element under the New York City Human Rights Law.

### C. Reasonable Accommodation & Undue Hardship

For Mr. Russo and Mr. Messiha's claims under the New York City Human Rights Law, if you find that the plaintiff was unable to fulfill all of the essential functions of the job without accommodation, then you must consider whether there were reasonable accommodations that the defendant could have made that would have enabled the plaintiff to fulfill the essential functions the plaintiff could not otherwise fulfill.

24

The New York City Human Rights Law defines a reasonable accommodation as an accommodation that does not cause undue hardship in the conduct of the defendant's business. With respect to this element of Mr. Russo and Mr. Messiha's claims under the New York City Human Rights Law, the New York City Human Rights Law requires the employer to engage in a cooperative dialogue with the employee. A cooperative dialogue is a process in which the employer and the employee, who is entitled or may be entitled to an accommodation, engage in good faith in a written or oral dialogue concerning the employee's accommodation needs; potential accommodations that may address the employee's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the employer. The burden for proving an undue hardship by a preponderance of the evidence lies with the defendant under the New York City Human Rights Law. Undue hardship, for purposes of the New York City Human Rights Law, means an accommodation requiring significant expense or difficulty.

In determining whether National Grid has proven that allowing Mr. Russo and/or Mr. Messiha to work from home would constitute an undue hardship, you may consider factors including, but not limited to:

      a. The nature and cost of the accommodation;

      b. The overall financial resources of the facility or the facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

c.  The overall financial resources of defendant; the overall size of the business of the defendant with respect to the number of its employees, the number, type, and location of its facilities; and

d.  The type of operation or operations of the defendant, including the composition, structure and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question.

## DAMAGES

If Mr. Russo or Mr. Messiha has proved by a preponderance of the evidence that the defendant is liable on any of plaintiff's claims, and you find that the defendant has not carried its burden of proof on its defenses, then you must determine the damages, if any, to which Mr. Russo and/or Mr. Messiah are entitled.

The fact that I am instructing you as to the proper measure of damages does not indicate any view of mine of which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event that you should find that one or both plaintiffs have established liability on a claim in accordance with my other instructions.

Additionally, the burden is on the plaintiff to prove damages by a preponderance of the evidence. You may award damages to compensate plaintiffs for injuries that he has proven he suffered as a result of defendant's unlawful conduct. Thus, the plaintiffs may not recover damages if they fail to carry the burden of proving the existence of injuries and that those injuries were caused by defendant's unlawful conduct. In awarding damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.

26

On the other hand, the law does not require the plaintiffs to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the evidence.

Your decision on whether to award damages and the amount must be unanimous. The verdict form I will give you will assist you in recording the determinations, if any, that you make as to damages. You may hear counsel for plaintiffs suggest an amount of damages for you to award plaintiffs. As I instructed you previously, the arguments of counsel are not evidence, and any damages you award plaintiff must be based on the evidence as I have instructed you.

## I.    Compensatory damages

If you return a verdict for Mr. Russo and/or Mr. Messiha on their claims, then you may award them such sum of money as you believe will fairly and justly compensate them for any injury you believe they sustained as a direct consequence of the conduct of the defendant. These damages are called compensatory damages. Compensatory damages seek to make the party whole—that is, to compensate the plaintiff for the financial loss that he has suffered because of the defendant's discriminatory actions. Compensatory damages are not limited merely to expenses that the plaintiff has had to pay. Instead, compensatory damages should fairly and justly compensate the plaintiff for the financial loss he has suffered as a result of an unlawful action by the employer.

There are two types of compensatory damages available in this case: (1) compensation for economic loss; and (2) compensation for mental anguish, pain and

suffering, humiliation, shock and discomfort that he has suffered because of defendant's conduct.

If you return a verdict in favor of one or both of the plaintiffs, then you must award him such money as you believe will fairly and justly compensate him for any financial loss or other injury sustained as a direct consequence of the conduct of the defendant. This includes damages for back pay, which is the amount of lost wages and benefits the plaintiff would have received from the defendant. These damages, if you find that they should be awarded, are calculated from the time the plaintiff was terminated until the date of your verdict.

Additionally, if you find that either Mr. Russo and/or Mr. Messiha have met their burden of proving that defendant's conduct was unlawful, the plaintiff is entitled to damages for the emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental anguish he has suffered as a result of the defendant's conduct.

You should not award damages for speculative injuries, but only for those that the plaintiff actually suffered as a result of the defendant's conduct or which the plaintiff is reasonably likely to suffer in the near future.

You must also consider whether and to what extent the plaintiff's injury was caused by events other than the actions of the employer. The plaintiff cannot recover for these.

In determining the amount of damages for each plaintiff, if any, you must exercise good judgment and common sense. The purpose of a damage award is to make a plaintiff whole, that is, to compensate for the injuries, if any, that resulted from the defendant's violation of his legal rights. The damages that you award should be fair and reasonable, neither inadequate nor excessive.

## II.     Mitigation

Plaintiff has a duty under the law to "mitigate" his damages which means he must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the defendant's actions or omissions. Plaintiff fails to mitigate his damages and is not entitled to backpay if he fails to remain in the labor market, fails to accept substantially similar employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason.

Defendant has the burden of proving that the plaintiff failed to mitigate. If the defendant persuades you, by a preponderance of the evidence, that the plaintiff failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of the plaintiff's damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity. In determining the amount of damages, you must exercise good judgment and common sense. The purpose of a damage award is to make a plaintiff whole, that is, to compensate for the injuries, if any, that resulted from the defendant's violation of his legal rights. The damages that you award should be fair and reasonable, neither inadequate nor excessive.

## III.     Nominal Damages

If you find that the defendant is liable but that no actual damages were proven, you should award the sum of $1.00, which is called nominal damages, to reflect your finding that the defendant is liable for a violation of the claims described above.

### IV.   Punitive Damages

If you find in favor of one or both plaintiffs, you may also consider whether to award punitive damages. The purpose of an award of punitive damages is to punish a wrongdoer for misconduct and to warn others against doing the same.

You may, but do not have to, award punitive damages under the ADA, if you find that the defendant acted with malice or reckless indifference to the plaintiff's federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

Even if you make a finding that there has been an act of discrimination with malice or reckless disregard of the plaintiff's federal rights, you cannot award punitive damages under the ADA if National Grid proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Mr. Russo and/or Mr. Messiha.

You may also award punitive damages under the New York State Human Rights Law or the New York City Human Rights Law if you find defendants have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Unlike the ADA, good faith is not a complete defense to punitive damages under the New York State and New York City Human Rights Laws, but an employer's good faith compliance procedures may be considered by you in determining whether punitive damages are warranted.

If you decide to award punitive damages, these same purposes should be kept in mind as you determine the appropriate amount of money to be awarded. That is, in fixing the amount to be awarded, you should consider the degree to which the defendant should be punished for the wrongful conduct, and the degree to which an award of one amount or another will deter a defendant from committing wrongful acts in the future. You must use sound reason in setting the amount—it must not reflect bias, prejudice, or sympathy toward any party. If you decide to award punitive damages to plaintiff, you should consider the following factors in assessing the amount of such damages: the nature and reprehensibility of what the defendant did, including the character of the wrongdoing; whether the defendant's conduct demonstrated an indifference to, or reckless disregard of, the rights of others; the vulnerability of plaintiff; how long the conduct went on; the defendant's awareness of the harm caused by its conduct; any concealment of the conduct; and the actual and potential harm created by the defendant's conduct.

An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

## CLOSING ARGUMENTS

With these instructions in mind, you will now hear from the lawyers, who will give their closing arguments. I remind you that arguments by lawyers are not evidence, because the lawyers are not witnesses. However, what they say to you in their closing arguments is intended to help you understand the evidence and to reach your verdict. Please pay careful attention to their arguments.

## DELIBERATIONS

### I.      Selection and Duties of the Foreperson

You are about to go into the jury room to begin your deliberations. The first thing that you should do when you retire to deliberate is to select one of you to function as your foreperson. You are free to select juror number one or any member as your foreperson. The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the court. The foreperson will send out any notes, and when you all have reached a verdict, the foreperson will notify the marshal and you will come into open court to present the verdict.

### II.      Right to See Exhibits and Hear Testimony; Communication with the Court

All of the exhibits admitted into evidence will be sent to the jury room with you. If you want any of the testimony read, you may request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of the testimony.

Your requests for testimony – in fact any communications with the Court – should be made to me in writing, signed, dated, and timed by your foreperson, and given to one of the marshals. Please make any notes as clear and precise as possible. Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached and announced in open court.

### III.    Notes

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are solely to

assist you as an aid to your memory. Do not share your notes with other jurors during deliberations. Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### IV.    Duty to Deliberate / Unanimous Verdict

You will now retire to decide the case. You must base your verdict solely on the evidence and these instructions as to the law, and you are obligated on your oath as jurors to follow the law as I instructed you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth. Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict. What the verdict shall be

33

is your sole and exclusive duty and responsibility. If you are divided, do not report how the vote stands, and if you have reached a verdict, do not report what it is until it is presented in open court.

### V.    Verdict Form

In a few moments, I will give you the verdict form with the questions for you to answer and you will retire to deliberate on your decision. The questions are not to be taken as any indication that I have any opinion as to how they should be answered. I have no such opinion, and even if I did, it would not be binding on you. You should also proceed through the questions in the order in which they are listed. You should answer every question except where the verdict form indicates otherwise. Remember, all answers must be unanimous.

### VI.    Return of Verdict

I have prepared a verdict form for you to use in recording your decision. On the form, there are spaces to indicate your determinations regarding each plaintiffs' claims against the defendant. You should proceed through the questions in the order in which they are listed. After you have reached a verdict, the foreperson should fill in the verdict sheet, sign and date it and then give a note to the deputy stating that you have reached a verdict. Do not specify what the verdict is in your note. Remember, the verdict must be unanimous and must reflect the conscientious judgment of each juror.

I stress again that each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced and officially recorded, it cannot ordinarily be revoked.

## CONCLUSION

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors, consider all of the evidence, apply your own common sense, and follow my instructions on the law, you will reach a fair verdict here. Thank you for your time and attentiveness.