UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LUCIANO RUSSO,
GEORGE MESSIHA,

*Plaintiffs*,

– against –

NATIONAL GRID, USA,

*Defendant*.

**MEMORANDUM & ORDER**
23-cv-03954 (NCM) (TAM)

**NATASHA C. MERLE**, United States District Judge:

Following a jury verdict in their favor on their failure-to-accommodate claims, plaintiffs Luciano Russo and George Messiha move for entry of judgment under Rule 58(b) of the Federal Rules of Civil Procedure in the form of their proposed judgment. *See* Notice of Mot., ECF No. 102; Proposed J., ECF No. 102-1; Mem. of Law Supp. Entry of Proposed J. ("Mem."), ECF No. 102-2; Am. Proposed J., ECF No. 104-1.[1] For the reasons stated below, the Court **GRANTS** the motion in part and **DENIES** the motion in part. The Court will direct entry of judgment after the parties submit the joint letter and proposed judgment described below.

## BACKGROUND

The Court assumes familiarity with the facts of this case, which are set forth in its order denying defendant's motion for judgment as a matter of law. *See* Mem. & Order ("Rule 50 Order"), ECF No. 113.

[1] All page references use ECF pagination except where noted.

The jury found that National Grid failed to provide each plaintiff a reasonable accommodation under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). *See* Verdict Sheet, ECF No. 98. Further, the jury found that the defendant did not prove by a preponderance of the evidence that allowing each plaintiff to work from home "would have constituted an undue hardship." Verdict Sheet 1–2, 5–6 (Questions 1–2, 8–9). The jury then awarded Russo $500,000 in back pay; $60,000 in emotional distress damages; and $1,000,000 in punitive damages, and awarded Messiha $275,000 in back pay; $275,000 in emotional distress damages; and $1,000,000 in punitive damages. Verdict Sheet 2–4, 6–7 (Questions 3–4, 6–7, 10–11, 13–14).

In addition to the jury's awards, plaintiffs' proposed judgment seeks pre-judgment interest, accommodation orders for both plaintiffs, credited service time and 401(k) contributions, and attorneys' fees. Proposed J. ¶¶ 4–5, 10–14; Am. Proposed J. ¶ 13. Plaintiffs also request an evidentiary hearing. Mot. for Extension of Time & Evidentiary Hr'g ("Hr'g Req."), ECF No. 115.[2]

## LEGAL STANDARD

When "the jury returns a special verdict or a general verdict with answers to written questions," or when "the court grants other relief not described in" Rule 58(b)(1), "the court must promptly approve the form of the judgment, which the clerk must promptly

---

[2] Defendant opposed the motion, *see* Def.'s Mem. of Law Opp'n ("Opp'n"), ECF No. 114, and plaintiffs replied, *see* Pls.' Reply Mem. of Law ("Reply"), ECF No. 117. Plaintiffs' request for additional time to file their reply, Hr'g Req. 2, is granted *nunc pro tunc*, and the Court has considered plaintiffs' reply. Since plaintiffs moved for entry of judgment, they have renewed their request for oral argument on their motion. Letter Req. for Oral Arg., ECF No. 118. Because the Court resolves the motion on the parties' submissions, that request is denied as moot.

enter." Fed. R. Civ. P. 58(b)(2). In approving the form of a judgment following a special verdict, the Court accepts "the findings of fact explicitly made or implicit in the jury's answers" and may make "such additional findings as the court may find *necessary*." *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1452 (Fed. Cir. 1984) (emphasis added);[3] *see* Fed. R. Civ. P. 49(a)(3). The Court may not, however, disregard or recast the jury's findings. *See Quaker City*, 747 F.2d at 1453. In other words, the judgment must reflect the true intent of the verdict, and the Court may not go beyond the facts the jury found. *See Wilson v. Eberle*, 18 F.R.D. 7, 8–9 (D. Alaska 1955).

Plaintiffs' remaining requests, for pre-judgment interest and equitable relief, do not turn on the jury's findings alone and are committed to the Court's discretion. *See H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 128 (2d Cir. 2023) ("[I]n a suit to enforce a federal right, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court."); 42 U.S.C. § 2000e-5(g)(1) (stating a court may grant equitable relief under the ADA "as the court deems appropriate").

## DISCUSSION

Plaintiffs' motion raises six issues. First, plaintiffs move the Court to enter judgment on the verdict in the form of their proposed judgment, which presents questions about how the judgment should describe the jury's findings and how the damages should be allocated among plaintiffs' claims. Second, plaintiffs ask for pre-judgment interest on their back pay awards. Third, plaintiffs seek the restoration of credited service time and retirement contributions. Fourth, plaintiffs pursue injunctive relief requiring National Grid to provide particular accommodations to each of them. Fifth, plaintiffs petition for

---

3 Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

an evidentiary hearing. Sixth, plaintiffs seek attorneys' fees and costs. The Court takes each request in turn.

## I. Form of the Judgment and Allocation of Damages

### *A. Plaintiffs' Proposed Description of the Jury's Findings*

Plaintiffs first ask the Court to enter judgment in the form of their proposed judgment, which restates the jury's findings and awards. *See* Proposed J. ¶¶ 1–3, 6–9. Defendant agrees that judgment should be entered on the jury's verdict but objects to the proposed judgment to the extent it "misstates and exceeds the jury's verdict." Opp'n 22.

For the most part, plaintiffs' proposed judgment reproduces the Verdict Sheet, but two of its paragraphs—paragraphs 2 and 3—"go beyond" the jury's findings. *Wilson*, 18 F.R.D. at 8. The jury found that defendant had not proven that allowing plaintiffs to work from home "would have constituted an undue hardship." Verdict Sheet 2, 5–6 (Questions 2, 9). Paragraph 2 of plaintiffs' proposed judgment would instead declare that remote work "does not constitute an undue hardship." Proposed J. ¶ 2. Similarly, the jury found each plaintiff "entitled to punitive damages," Verdict Sheet 4, 7 (Questions 6, 13), while paragraph 3 would declare that defendant's violations were "sufficiently egregious," Proposed J. ¶ 3. *See* Opp'n 22–23. These distinctions are not just semantics.

The jury's undue hardship answers concern plaintiffs' requests as they existed during the relevant period before trial; they are not a finding about the present or the future. The judgment must reflect this. A judgment declaring that remote work "does not" constitute an undue hardship would aim to resolve a question about plaintiffs' present and future circumstances that was never submitted to the jury.

Similarly, the plaintiffs' request to refashion the jury's punitive damages finding as a finding of "sufficiently egregious" conduct would attribute to the jury a characterization

it never made. Importantly, "egregious" conduct is not a prerequisite to punitive damages. Though such conduct may serve as evidence of the requisite state of mind, it is not an independent requirement. Under the ADA, the question concerning punitive damages is whether the employer acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (holding that § 1981a "does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind"). And under the NYCHRL, the relevant query is whether the employer engaged in discrimination with "willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others," *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017). The jury was instructed on both standards, and neither instruction required a finding of egregious conduct. *See* Jury Instrs. 30, ECF No. 97. Plaintiffs' proposed language would thus not only depart from the jury's finding but also misstate the governing standard.

Plaintiffs attempt to avoid this conclusion by arguing that the Court may "infer" and "independently determine" these broader findings from the jury's answers. Reply 12–13. However, they fail to cite any authority or support for the conclusion that their proposed broader findings are the reasonable inference to make from the jury's answers for purposes of the judgment. To be sure, the Court enjoys the latitude to make "such additional findings as [it] may find necessary." *Quaker City*, 747 F.2d at 1452; *see also* Reply 11. But plaintiffs fail to identify any support in the verdict, the jury instructions, or the trial record for a finding about plaintiffs' current or future circumstances, a question that was never tried. Nor do plaintiffs offer any basis for characterizing defendant's conduct as "sufficiently egregious" beyond what the jury found. And as stated, the Court's

authority to make additional findings does not extend to rewriting the jury's answers. *See Quaker City*, 747 F.2d at 1453.[4]

Accordingly, the Court strikes paragraphs 2 and 3 of plaintiffs' proposed judgment—the judgment will instead reproduce the jury's findings as stated in the Verdict Sheet.

### *B. The ADA's Damages Cap and Allocation of Damages Among Plaintiffs' Claims*

Although neither party addresses the issue, the judgment must also account for the statutory limit on damages under the ADA. The ADA caps the sum of compensatory damages for nonpecuniary losses and punitive damages at no more than $300,000 per plaintiff from an employer of defendant's size. 42 U.S.C. § 1981a(b)(3)(D). When the jury's combined nonpecuniary loss and punitive awards exceed the cap, "the district court reduces the award to ensure that it conforms with subsection (b)(3)." *Luciano v. Olsten Corp.*, 110 F.3d 210, 221 (2d Cir. 1997); *see also Oliver v. Cole Gift Ctrs., Inc.*, 85 F. Supp. 2d 109, 112 (D. Conn. 2000) (holding that the cap "is not an affirmative defense and is not waivable"). However, back pay and interest on back pay are not subject to the cap, 42 U.S.C. § 1981a(b)(2).

Further, neither the NYSHRL nor the NYCHRL limits compensatory damages for nonpecuniary losses; the NYCHRL also does not limit punitive damages.

The jury found National Grid liable, and found each plaintiff entitled to nonpecuniary losses in the form of emotional distress damages, and punitive damages

---

4 That limitation, however, concerns only what the judgment may attribute to the jury. It does not prevent the Court from considering the trial record in deciding whether to grant equitable relief, a question committed to the Court rather than the jury. *See infra* Section IV.

under all three statutes. Verdict Sheet 1, 4–5, 7 (Questions 1, 6, 8, 13). The jury awarded Russo $60,000 in emotional distress damages and $1,000,000 in punitive damages, and awarded Messiha $275,000 in emotional distress damages and $1,000,000 in punitive damages, for totals of $1,060,000 and $1,275,000, respectively, well above the ADA's cap. Here, the jury awarded a single damage amount in each category without apportioning it among the statutes under which defendant was found liable. Verdict Sheet 1, 3–7 (Questions 1, 4, 7, 8, 11, 14). Those awards are therefore "effectively fungible," *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 509 (9th Cir. 2000), and allocating the excess to the state and city claims gives full effect to the jury's verdict without exceeding any statutory limit.

Accordingly, to the extent they exceed the ADA's $300,000 cap, the emotional distress damages will be awarded under the NYSHRL and NYCHRL, and the punitive damages will be awarded under the NYCHRL. *See Luciano v. Olsten Corp.*, 912 F. Supp. 663, 674–76 (E.D.N.Y. 1996), *aff'd*, 110 F.3d 210 (2d Cir. 1997); *Passantino*, 212 F.3d at 509–10 (affirming allocation of compensatory damages to state-law claim where the jury found for the plaintiff on both federal and state claims and "awarded damages without specifying any particular allocation," because "[a]n allocation that would serve to reduce lawfully awarded damages would fail to respect the jury's verdict"). This approach is consistent with the Second Circuit's guidance that "where only a single award of damages, not segregated into separate components, is made, the preferable rule . . . is that the successful plaintiff be paid under the theory of liability that provides the most complete recovery." *Magee v. United States Lines, Inc.*, 976 F.2d 821, 822 (2d Cir. 1992) (explaining that the rule is not limited to maritime cases and citing its application to "federal and state civil rights claims").

* * *

The judgment will therefore include the jury's liability findings and damages awards, as set forth in paragraphs 1 and 6 through 9 of the plaintiffs' proposed judgment. Specifically, the judgment will award $500,000 in back pay, $60,000 in emotional distress damages, and $1,000,000 in punitive damages plus interest as set forth below for plaintiff Russo; and $275,000 in back pay, $275,000 in emotional distress damages, and $1,000,000 in punitive damages[5] plus interest as set forth below for plaintiff Messiha. These awards are subject to the allocation to the claims as set forth above. The judgment will also include any additional back pay and benefits determined as set forth in Section III below.

## II. Interest Award

### *A. Entitlement to Pre-Judgment Interest*

Plaintiffs seek pre-judgment interest on their back pay awards, compounded annually at the Internal Revenue Service's ("IRS") underpayment rates from January 1, 2023. Proposed J. ¶¶ 4–5; Mem. 3–6. Defendant, in turn, responds that pre-judgment interest should be denied or, alternatively, calculated at the federal rate from the midpoint of each back pay period. Opp'n 9–13. The Court agrees that plaintiffs are entitled to pre-judgment interest on their back pay awards, but concludes that interest here must be calculated at the federal rate.

The Supreme Court has "consistently acknowledged that a monetary award does not fully compensate for an injury unless it includes an interest component." *Kansas v.*

---

5 To the extent plaintiffs request that the Court find that defendant has waived any future challenge to the punitive damages awards, that request is denied. No motion under Rule 59 for remittitur is before the Court, and the Court therefore does not reach that question. *See* Reply 7; Pls.' Letter Reply Br. 2, ECF No. 105.

*Colorado*, 533 U.S. 1, 10 (2001). The "essential rationale" behind a pre-judgment interest award "is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995). The Second Circuit has noted that "an award of pre-judgment interest may be needed in order to ensure that the defendant not enjoy a windfall as a result of its wrongdoing." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 54 (2d Cir. 2009); *see also Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 58 (2d Cir. 1984) ("Failure to award interest would create an incentive to violate [federal law], because violators in effect would enjoy an interest-free loan for as long as they could delay paying out back wages.").

In employment-related cases, "[t]o the extent . . . that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion *not* to include pre-judgment interest." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998). In exercising its discretion, the Court considers "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.*

Defendant argues that pre-judgment interest is inappropriate because there was a good-faith dispute about plaintiffs' disabilities and the safety of remote work. Opp'n 10. To be sure, pre-judgment interest may be inappropriate "when the defendant acted innocently and had no reason to know of the wrongfulness of his actions" or "when there is a good faith dispute between the parties as to the existence of any liability." *Wickham Contracting Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 834–35 (2d Cir. 1992). But the jury rejected defendant's positions on liability and undue hardship, and awarded punitive damages. By awarding punitive damages, the jury necessarily found

that defendant acted with at least reckless disregard of plaintiffs' rights. Verdict Sheet 1–2, 4–7 (Questions 1–2, 6, 8–9, 13); Jury Instrs. 30. Such a finding is inconsistent with defendant's contention that it acted innocently or in good faith.

Defendant also argues that pre-judgment interest exceeds the scope of a motion for entry of judgment because it requires a discretionary, merits-based determination. *See* Opp'n 9–10 (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989)). That the decision is discretionary does not mean the Court cannot make it now; the Court must determine the amount of the judgment it enters, and the Second Circuit has made clear that pre-judgment interest on lost wages is ordinarily required. *See Gierlinger*, 160 F.3d at 873. Indeed, *Osterneck* counsels in favor of resolving the question of pre-judgment interest at this juncture. As the Supreme Court explained, "prejudgment interest traditionally has been considered part of the compensation due plaintiff," and a post-judgment request for it is therefore a motion "to alter or amend the judgment under Rule 59(e)." *Osterneck*, 489 U.S. at 175. Because pre-judgment interest is part of the compensation the judgment awards, the Court addresses it now rather than leaving it for a post-judgment motion.

Plaintiffs are entitled to pre-judgment interest on their back pay awards. *See Sharkey v. Lasmo*, 214 F.3d 371, 375 (2d Cir. 2000). A pre-judgment interest award is especially appropriate here, where plaintiffs are "wage earners[] who ordinarily do not have access to resources other than their wages to meet the necessities of daily living." *Donovan*, 726 F.2d at 58. In light of National Grid's actions, plaintiffs went without wages for at least a year. *See* Tr. 133:22–134:4, 251:3–25; Mem. & Order on Summ. J. ("SJ Order") 3–4, ECF No. 56; Hr'g Req. 2.

*B. Calculation of Pre-Judgment and Post-Judgment Interest*

The Court does not, however, adopt plaintiffs' proposed calculations using the IRS rates for the pre-judgment interest.

First, plaintiffs offer no support for using the IRS rates under 26 U.S.C. § 6621, and they acknowledge that the federal rate applies where, as here, a judgment rests on both state and federal law. Mem. 5 (citing *Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 280 (2d Cir. 2010)). Accordingly, pre-judgment interest will be calculated as accruing at the average rate of return on one-year Treasury bills, as set forth in 28 U.S.C. § 1961(a), compounded annually. Annual compounding is consistent with the common practice of courts in this Circuit. *See* Opp'n 12 (collecting cases).

Second, plaintiffs propose that interest run on the full amount of their back pay awards from January 1, 2023. Proposed J. ¶¶ 4–5. However, that request is without merit because pre-judgment interest compensates a plaintiff for the loss of the use of money owed to him; it is not meant to compensate for money that was not yet owed. Applying interest to the entire award from the beginning of the back pay period would treat all of plaintiffs' lost wages as though they were owed on that date, when in fact a substantial portion accrued later.

Here, the jury awarded back pay as a lump sum, but the record reflects that plaintiffs' lost wages accrued over time, not all on January 1, 2023. *See* SJ Order 3–4; Opp'n 11. Where back pay was incurred at various times, "courts in the Second Circuit have used the midpoint of the economic damages period as the starting date and compounded interest annually." *Garcia Mejia v. Bahche Inc.*, No. 24-cv-07483, 2026 WL 1370795, at *28 (E.D.N.Y. May 18, 2026). Running interest from the midpoint of their back pay periods approximates the timing of plaintiffs' losses and avoids

overcompensation, consistent with the principle that "[a]wards of prejudgment interest must not result in over-compensation of the plaintiff." *Wickham*, 955 F.2d at 834. Thus, the Court will adopt the same approach here.

Accordingly, plaintiffs are awarded pre-judgment interest on their back pay awards, calculated at the average rate of return on one-year Treasury bills under 28 U.S.C. § 1961(a), compounded annually, from the midpoint of each plaintiff's back pay period through the date of entry of judgment. To the extent paragraphs 4 and 5 of the proposed judgment seek interest at different rates or from a different date, those requests are denied. Because the record does not establish the exact beginning and end of each of their back pay periods, the parties shall include in their joint letter, due December 23, 2026, a calculation that sets forth the beginning and end of each plaintiff's back pay period.

In addition, and as plaintiffs request, *see* Proposed J. ¶¶ 6–9, post-judgment interest shall accrue on the full judgment from the date of its entry at the rate set forth in 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." *See H.C.*, 71 F.4th at 129 (explaining that "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered").

## III. Credited Service Time and Retirement Contributions

Plaintiffs also seek compensation for benefits they lost during the back pay period. Specifically, they request that National Grid: (1) restore Messiha's credited service time for purposes of his pension, sick leave, and other benefits; (2) restore Russo's credited service time for purposes of sick leave and other benefits; (3) make employer contributions to Russo's 401(k) plan as though he had worked throughout the back pay period; and (4) allow Russo to make retroactive contributions for 2023 through 2025.

Proposed J. ¶¶ 12–13; Am. Proposed J. ¶ 13. Each of plaintiffs' requests seeks to remedy losses incurred during the period of the awarded back pay.

Defendant opposes plaintiffs' requests. It argues that the 401(k) contributions would expand the jury's back pay award, that the requests are unsupported by the record, and that they would require the Court to interpret the parties' collective bargaining agreement and benefit plans. Opp'n 14–15, 18.

Plaintiffs are correct that relief of this kind is generally available. Equitable relief in employment discrimination cases aims to make the victim whole by restoring him, so far as possible, to the position he would have occupied absent the discrimination. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–21 (1975). Back pay thus includes not only lost wages but also "lost fringe benefits such as vacation pay and pension benefits." *Noel v. N.Y. State Off. of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012) (quoting *United States v. Burke*, 504 U.S. 229, 239 (1992)); *see Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144–45 (2d Cir. 1993); *EEOC v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 123–24 (2d Cir. 1999). So too is seniority credit for time an employee would have worked but for the employer's unlawful conduct. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764–66 (1976).[6] As with pre-

[6] Seniority and credited service are generally defined by the governing collective bargaining agreement and benefit plans. Seniority may be used both "to allocate entitlements to scarce benefits among competing employees," such as job and shift bidding, overtime, and layoff and recall order, and "to compute noncompetitive benefits earned under the contract of employment," such as vacation entitlement. *Franks*, 424 U.S. at 766 (distinguishing "competitive status" seniority from "benefit" seniority). Credited service typically refers to the service counted toward eligibility for, and the amount of, pension benefits. Because neither the collective bargaining agreement nor the benefit plans are laid out in the record, the Court directs the parties to address how these terms apply to plaintiffs in their joint letter, as set forth below.

judgment interest, denying such relief altogether would leave plaintiffs worse off, and National Grid better off, than if National Grid had complied with the law.

However, the current record does not establish what is owed. The jury was instructed that back pay is "the amount of lost wages and benefits the plaintiff would have received from the defendant." Jury Instrs. 28. But the evidence plaintiffs presented on back pay concerned their wages. Plaintiffs introduced their pay stubs and W-2s and testified to their gross earnings for 2021 through 2023, *see* Tr. 134:5–138:4, 249:14–251:2, 253:20–254:19, and plaintiffs' counsel asked the jury to calculate back pay by averaging plaintiffs' 2021 and 2022 earnings and subtracting the income each received after 2022, Tr. 782:22–784:14. Further, although plaintiffs testified about their own 401(k) contributions, Tr. 134:21–135:3, 250:10–13, neither side presented evidence of National Grid's contributions to plaintiffs' retirement accounts, plaintiffs' pension accruals, or their credited service, and plaintiffs did not ask the jury to award those amounts. Nor are the collective bargaining agreement or the relevant benefit plans in the record. According to plaintiffs, Russo participates in a 401(k) plan with an employer match under the collective bargaining agreement, Messiha participates in National Grid's pension plan, and an employee on unpaid medical leave accrues neither pension credit nor 401(k) contributions. Reply 8–9. On this record, the Court cannot determine what amounts would be owed or whether, and to what extent, the jury's back pay awards already account for them.[7]

---

[7] For example, plaintiffs' counsel calculated Russo's lost pay at $414,000, while noting that the figure did not account for annual union wage increases, Tr. 783:21–784:14, but the jury awarded Russo $500,000 in back pay, Verdict Sheet 3. The record does not reveal whether the difference reflects lost benefits, wage increases, or something else.

The Court therefore grants plaintiffs' requests in part. First, to the extent either plaintiff's seniority or credited service did not accrue during his back pay period because of his absence from work due to his accommodation denial, National Grid shall credit him with that seniority and credited service, for all purposes under the collective bargaining agreement and the applicable benefit plans, as though he had worked throughout that period.

Second, the parties shall meet and confer and file a joint letter by December 23, 2026, addressing: (a) whether the jury's back pay awards included the value of any retirement contributions, pension accruals, or other benefits; (b) the employer 401(k) contributions, pension accruals, and other benefits each plaintiff would have received during his back pay period, and whether Russo may make retroactive employee contributions for that period; (c) how seniority and credited service accrue under the collective bargaining agreement and benefit plans, and whether and to what extent each plaintiff's seniority or credited service was affected by his absence; and (d) the back pay owed to Russo for the period between the verdict and the earlier of his return to work or the entry of judgment.[8] The parties shall cite to the trial transcript where necessary, and attach the relevant provisions of the collective bargaining agreement and benefit plans. To the extent the parties agree, the agreed amounts will be included in the judgment. To

---

[8] Although the jury was instructed to calculate back pay through the date of its verdict, Jury Instrs. 28, back pay ordinarily runs through the date of judgment, with front pay covering any loss thereafter. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001); *Noel*, 697 F.3d at 213. Russo has not been paid since January 2023 and remains out of work, *see* Tr. 133:22–134:4; Hr'g Req. 2, so his back pay should be calculated through his return to work under this Order or the entry of judgment, whichever is earlier. Messiha, by contrast, returned to work in August 2024, Tr. 251:24–25, and thus there is no additional back pay to calculate.

the extent they do not, each party shall set forth its position and supporting evidence, and the Court will resolve the dispute.

Accordingly, plaintiffs' requests, Proposed J. ¶¶ 12–13; Am. Proposed J. ¶ 13, are granted in part as set forth above.

## IV. Injunctive Relief Concerning Plaintiffs' Accommodations

Plaintiffs also seek injunctive relief concerning their accommodations. Specifically, Russo seeks to work remotely, with whatever equipment he needs, until his physicians deem him capable of returning to the dispatch center. And Messiha seeks reinstatement of his parking pass and to be permitted to work remotely should he again become disabled. Proposed J. ¶¶ 10–11. National Grid opposes, arguing that the requested relief exceeds the jury's verdict, lacks record support, and is impermissibly vague. Opp'n 13–21. For the reasons below, the Court grants Russo's request in part and orders National Grid to restore the remote work accommodation Russo had from 2020 to 2022, subject to modification by the Court, and denies Messiha's request.

### *A. Applicable Standard*

The ADA permits a court to order "reinstatement . . . or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1); *see id.* § 12117(a). A plaintiff seeking a permanent injunction must demonstrate "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In the employment discrimination context, a court's authority to fashion equitable relief is broad, *see Bridgeport Guardians,*

*Inc. v. City of Bridgeport*, 933 F.2d 1140, 1149 (2d Cir. 1991), and injunctive relief is appropriate where there is a "cognizable danger of recurrent violation." *EEOC v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Any injunction must also "state its terms specifically." Fed. R. Civ. P. 65(d)(1)(B).

Plaintiffs are correct that courts have broad equitable authority to make victims of employment discrimination whole. *See* Reply 6–7; *Albemarle*, 422 U.S. at 418. Any such relief must also be grounded in the violation found and the record before the Court, *see Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994), and plaintiffs, as the parties seeking a permanent injunction, bear the burden of demonstrating that it is warranted, *see eBay*, 547 U.S. at 391. Plaintiffs gave notice before trial that they would seek this relief from the Court after the verdict. Joint Pretrial Order ("JPTO") 5–6, ECF No. 67; Tr. 92:13–94:5. The question is therefore not whether plaintiffs may seek equitable relief, but whether they have shown that it is warranted.

*B. Russo's Request for a Remote Work Accommodation*

The Court turns first to Russo's request for injunctive relief. Russo remains employed by National Grid, JPTO Stip. ¶ 24, so reinstatement is not at issue. Rather, the question is whether Russo is entitled to "return" to work remotely until his doctors deem him capable of returning in person. In essence, Russo seeks a permanent injunction requiring National Grid to provide Russo a specific accommodation—remote work—for an indefinite period. Proposed J. ¶ 10.

The Court concludes that Russo is entitled to an injunction restoring his remote work accommodation, though not on the open-ended terms he proposes.

First, restoring Russo's remote work accommodation is grounded in the violation the jury found. Russo asked to continue working from home, and National Grid denied that request in 2022. JPTO Stip. ¶¶ 20–23. The jury found that National Grid failed to provide Russo a reasonable accommodation and that National Grid did not prove that "allowing [Russo] to work from home would have constituted an undue hardship." Verdict Sheet 1–2 (Questions 1–2). The Court concludes that, to reach that verdict under the ADA, the jury necessarily found that Russo could perform the essential functions of his position with a reasonable accommodation, *see* Jury Instrs. 15–18, a question the Court left for trial, *see* SJ Order 9–17. And all dispatchers, including Russo, performed their work remotely from 2020 to 2022. JPTO Stip. ¶ 19. Courts may not enter injunctions that have "gone beyond the scope of the issues tried in the case," *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299–300 (2d Cir. 1999), but remote work is the very accommodation the jury considered. Restoring it is thus "narrowly tailored to fit [the] specific legal violation[]" the jury found. *Waldman*, 43 F.3d at 785.

To be sure, the jury's verdict did not establish that remote work is the *only* reasonable accommodation. As the Court explained, the jury could have found that Russo "would have accepted an alternative that included a private bathroom had it been offered." Rule 50 Order 30–31; *see Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 95 (2d Cir. 2015) ("[E]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee."); *see also* Tr. 139:12–17 (Russo testifying that he stayed out of work because he needed "to be near a private bathroom"). The relief ordered below accounts for that possibility by permitting National Grid to move to substitute an effective alternative accommodation.

Moreover, Russo requests that he be permitted to work remotely "until such time as his treating physicians deem him physically capable" of returning, with "whatever equipment he needs." Proposed J. ¶ 10. Those terms would leave the scope of National Grid's obligations to be defined by third parties and future events, rather than stating them "specifically" and "in reasonable detail" as is required by Rule 65. Fed. R. Civ. P. 65(d)(1). The Court therefore declines to adopt those terms. Instead, the relief below is defined by reference to the remote work arrangement Russo had from 2020 to 2022 and remains in effect until modified by the Court.

Second, National Grid argues that Russo's accommodation must be determined anew through the interactive process. *See* Opp'n 16–17. But National Grid has had that opportunity. It considered Russo's request in 2022 and denied it, and the jury found that denial unlawful. Requiring Russo to begin again, with the same employer and under the same in-person requirement, would leave him without an effective remedy for the violation the jury found. Indeed, the First Circuit has contemplated reinstating an employee "on the same terms allowed by [the employer] prior to" her unlawful termination. *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 19–20 (1st Cir. 1999). The relief here does the same: it restores the accommodation National Grid allowed Russo before it withdrew it.

Nor does the passage of time undermine this relief. Russo represents that his disability "remain[s] the same," Hr'g Req. 2, and at trial he testified that his condition has continued to worsen since 2022, Tr. 138:19–139:5. The symptoms that made remote work necessary have thus not abated. To the extent Russo's condition or needs have changed, or may change in the future, the procedure below permits National Grid to request current medical documentation and either party to seek modification.

Third, the remaining equitable factors favor relief. The record shows a "cognizable danger of recurrent violation." *KarenKim*, 698 F.3d at 100 (quoting *W.T. Grant*, 345 U.S. at 633). National Grid's in-person requirement, the basis for denying Russo's request, JPTO Stip. ¶¶ 20–23, has not changed so far as the record reflects, and Russo has not returned to work since 2022, JPTO Stip. ¶ 24. Russo's injury is also ongoing in a way the jury's awards do not address. Back pay compensates Russo for wages lost before he returns to work or judgment is entered, but Russo remains unable to return to work without an accommodation. *See* Tr. 133:22–134:4; Hr'g Req. 2. No monetary award can return him to work. And given the jury's finding that National Grid did not prove undue hardship, the balance of hardships and the public interest in enforcing the ADA favor restoring the accommodation. *See eBay*, 547 U.S. at 391; *EEOC v. United Health Programs of Am., Inc.*, 350 F. Supp. 3d 199, 212–28 (E.D.N.Y. 2018) (granting post-verdict injunctive relief under Title VII).

Accordingly, by December 23, 2026, National Grid shall permit Russo to resume performing the duties of his Gas Dispatcher position remotely, on the same terms as the remote work arrangement in effect for dispatchers from 2020 to 2022, and shall provide him with company-issued equipment, comparable to the equipment he used during that period, necessary to perform his duties. National Grid may request reasonable, current documentation of Russo's medical condition and limitations, *see* Opp'n 16, but such a request shall not delay Russo's return to work. To the extent the parties disagree about the equipment Russo requires, they shall address that disagreement in the joint letter described below. This accommodation shall remain in effect until modified by the Court.

If the parties agree on an alternative accommodation, they may jointly submit the proposal to the Court for approval. Further, either party may move to modify this relief

based on a material change in circumstances. *See* Fed. R. Civ. P. 60(b)(5). The party seeking modification bears the burden of establishing "a significant change either in factual conditions or in law" that renders continued enforcement "detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009). That is a high bar. Any application to amend this injunction must explain the reason for the change in the accommodation, establish that the requested accommodation is reasonable in light of Russo's current limitations and the duties of his position, and demonstrate that it is consistent with the jury's verdict and the Court's prior rulings.

Russo's request for injunctive relief, Proposed J. ¶ 10, is therefore granted in part, as set forth above.

*C. Messiha's Requests*

The Court turns next to Messiha's requested injunctive relief. He asks the Court to reinstate his parking pass and to order that, should he "again become disabled," he be permitted to work from home. Proposed J. ¶ 11. Unlike Russo, Messiha seeks relief that the jury did not award and was not asked to consider. Messiha presented evidence as to his accommodation requests and ability to perform the essential functions of his job as of 2022. *See* JPTO Stip. ¶¶ 20–23. Thus, the jury's verdict concerned those facts and that time period. The verdict therefore did not address Messiha's parking pass (which plaintiff alleges was revoked and which was never tried, *see* Mem. 9), or any potential future disability.

Indeed, the record shows that Messiha returned to work in August 2024 with a parking accommodation. JPTO Stip. ¶ 24. Plaintiff asserts that National Grid has since revoked that accommodation, *see* Mem. 9, and that Messiha "has not been allowed to work from home when he is disabled," Reply 10. Although the Court has broad authority

to fashion equitable relief, *see Albemarle*, 422 U.S. at 418–21, that authority extends to remedying the unlawful employment practice the jury has found, *see* 42 U.S.C. § 2000e-5(g)(1); *id.* § 12117(a); *Waldman*, 43 F.3d at 785. No factfinder has determined whether revoking Messiha's parking accommodation, which occurred after he returned to work in 2024 and is not alleged in the operative complaint, *see* Second Am. Compl., ECF No. 17, violated the ADA, the NYSHRL, or the NYCHRL. The jury's verdict concerned National Grid's response to Messiha's 2022 request to work remotely. Any claim arising from the revocation must proceed, if at all, through the ordinary processes for asserting such claims, not through the entry of judgment in this case.

Plaintiff also represents that Messiha is planning back surgery that will require him to be absent from the office. Mem. 9. Although Messiha testified at trial to a history of back problems, *see* Tr. 211:5–12, 241:17–23, the jury had no occasion to consider whether he would need an accommodation to recover from a surgery that had not yet been scheduled. Whether Messiha will need an accommodation during his recovery, and what accommodation would be reasonable, depend on his medical condition and limitations at that time, matters that, again, must be addressed in the first instance through the interactive process. *See Quint*, 172 F.3d at 20. The Court cannot predetermine what accommodation would be reasonable for a future disability. *See Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 199 (E.D.N.Y. 2012) (holding that a "speculative assertion is insufficient to warrant . . . permanent injunctive relief"). The Court nevertheless directs National Grid to be mindful of the Court's prior rulings, as well as the evidence presented at trial and the jury's resulting verdict, in engaging in the interactive process and fashioning, to the extent necessary, an accommodation that does not again violate the law.

Accordingly, Messiha is not entitled to the injunctive relief he seeks.

*D. Plaintiffs' Request for an Injunction Against Future Violations*

Separately, both plaintiffs assert that National Grid "will continue to flout their duties under the law," Reply 10, and thus request an injunction against future violations of the law. However, the Court may not award permanent injunctive relief on the basis of "speculative assertion[s]." *Welch*, 871 F. Supp. 2d at 199 (denying post-verdict permanent injunction where plaintiff showed neither irreparable harm nor an inadequate remedy at law, and his concern that his employer might stop accommodating his disability in the future was "speculative").

Though plaintiffs recite the relevant *eBay* factors for assessing such relief, they do not apply the factors to the facts in this case. Apart from Russo's ongoing exclusion from work, addressed above, plaintiffs do not explain why the substantial damages the jury awarded, which compensate plaintiffs for their lost wages and benefits and their emotional distress and punish defendant's conduct, are inadequate to remedy the violations the jury found. *See Welch*, 871 F. Supp. 2d at 199 (denying injunction where plaintiff had not shown "how, despite the compensatory damages awarded, there is an absence of an adequate remedy at law"). Nor do plaintiffs address the balance of hardships or the public interest. Absent such a showing, permanent injunctive relief is not warranted. *See eBay*, 547 U.S. at 391. Plaintiffs' request for an injunction against future violations is therefore denied.

**V. Evidentiary Hearing**

Plaintiffs also request an evidentiary hearing so that the judgment can "reflect the current situation," including Russo's continued absence from work, Messiha's parking privileges and upcoming surgery, the benefits that accrue to employees on National Grid's payroll, and an updated back pay figure. Hr'g Req. 2; *see also* Reply 10–11. A hearing is

not necessary currently. The parties have fully briefed the relief that should accompany the verdict, and that "paper" hearing affords plaintiffs all the process they are due. *Cf. Starter*, 170 F.3d at 299 (holding that notice and a "paper" hearing gave the party against whom a permanent injunction was entered "all the process it was due").

The back pay owed to Russo after the verdict and the benefits that accrue to employees on National Grid's payroll will be addressed in the first instance in the parties' joint letter, as set forth in Section III. Russo's current condition can be addressed through the medical documentation and modification procedure set forth in Section IV.B. And Messiha's post-verdict circumstances concern conduct the jury had no occasion to consider. Should a hearing become necessary to resolve any of these matters, the Court will schedule one. Plaintiffs' request for an evidentiary hearing is therefore denied without prejudice.

## VI. Attorneys' Fees and Costs

Finally, plaintiffs ask the Court to declare in the judgment that they are entitled to attorneys' fees and costs, and to set a schedule for their fee application. Proposed J. ¶ 14. National Grid does not address this request. Each of the statutes under which plaintiffs prevailed authorizes an award of fees to a prevailing party. *See* 42 U.S.C. § 12205; N.Y. Exec. Law § 297(10); N.Y.C. Admin. Code § 8-502(g). But whether, and in what amount, fees and costs should be awarded is a question for a properly supported motion, not for the judgment itself. *See* Fed. R. Civ. P. 54(d)(2). Accordingly, the Court strikes paragraph 14 of plaintiffs' proposed judgment but adopts plaintiffs' proposed timing: any motion for attorneys' fees and costs shall be filed within 30 days of entry of final judgment.

## CONCLUSION

Plaintiffs' motion for entry of judgment, ECF No. 102, is **GRANTED in part** and **DENIED in part**. Specifically:

(1) The judgment will reflect the jury's findings as stated in the Verdict Sheet: that defendant failed to provide each plaintiff a reasonable accommodation in violation of the ADA, the NYSHRL, and the NYCHRL; that defendant did not prove that allowing each plaintiff to work from home would have constituted an undue hardship; and that each plaintiff is entitled to punitive damages. Proposed J. ¶ 1; Verdict Sheet 1–2, 4–7 (Questions 1–2, 6, 8–9, 13). The Court strikes paragraphs 2 and 3 of plaintiffs' proposed judgment.

(2) Judgment will be entered in favor of Russo in the amount of $500,000 in back pay, $60,000 in emotional distress damages, and $1,000,000 in punitive damages, and in favor of Messiha in the amount of $275,000 in back pay, $275,000 in emotional distress damages, and $1,000,000 in punitive damages. To the extent the emotional distress and punitive damages exceed the limit set forth in 42 U.S.C. § 1981a(b)(3), the emotional distress damages are awarded under the NYSHRL and NYCHRL, and the punitive damages are awarded under the NYCHRL.

(3) Plaintiffs are awarded pre-judgment interest on their back pay awards at the average rate of return on one-year Treasury bills under 28 U.S.C. § 1961(a), compounded annually from the midpoint of each plaintiff's back pay period through the date of entry of judgment.

(4) Post-judgment interest shall accrue on the full judgment under 28 U.S.C. § 1961(a).

(5) Russo's request for injunctive relief, Proposed J. ¶ 10, is GRANTED in part. By December 23, 2026, National Grid shall permit Russo to perform the duties of his Gas Dispatcher position remotely, on the same terms as the remote work arrangement in effect from 2020 to 2022, with comparable company-issued equipment, as set forth in Section IV.B. That accommodation shall remain in effect until modified by the Court. Messiha's request for injunctive relief, Proposed J. ¶ 11, is DENIED.

(6) Plaintiffs' requests for the restoration of credited service time and for retirement contributions, Proposed J. ¶¶ 12–13; Am. Proposed J. ¶ 13, are GRANTED in part. National Grid shall credit each plaintiff with any seniority and credited service that did not accrue during his back pay period because of his absence from work, and the parties shall address the remaining benefits in their joint letter, as set forth in Section III.

(7) Plaintiffs' request for an evidentiary hearing, Hr'g Req., is DENIED without prejudice.

(8) Plaintiffs' request to include an award of attorneys' fees and costs in the judgment, Proposed J. ¶ 14, is DENIED without prejudice to a timely motion under Rule 54(d)(2).

(9) Plaintiffs' request for additional time to file their reply, Hr'g Req. 2, is GRANTED *nunc pro tunc*. The Court has considered plaintiffs' reply.

(10) Plaintiffs' request for oral argument, Letter Req. for Oral Arg., is DENIED as moot because the Court resolves the motion on the parties' submissions.

By December 23, 2026, the parties shall file a joint proposed judgment consistent with this Order, incorporating the calculations set forth in the joint letter described below. To the extent the parties disagree on any language in the proposed judgment, each party shall set forth its position in the joint letter.

Also by December 23, 2026, the parties shall file a joint letter setting forth each plaintiff's back pay period, its midpoint, and the resulting pre-judgment interest calculation, as well as plaintiffs' credited service, retirement contributions, other benefits, and Russo's post-verdict back pay set forth in Section III, and any disagreement about Russo's equipment set forth in Section IV.B. The parties shall attach the relevant collective bargaining agreement provisions and benefit plans to the joint letter.

Upon receipt of the joint letter and proposed judgment, the Court will resolve any remaining disputes and direct the Clerk of Court to enter a separate judgment consistent with this Order, including the injunctive relief set forth in Section IV.B. *See* Fed. R. Civ. P. 58(a), (b)(2).

Any motion for attorneys' fees and costs shall be filed within 30 days of entry of final judgment.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: November 25, 2026
Brooklyn, New York